UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:
Daniel C. Hoffman and
Beth A. Hoffman,

BKY Case No. 13-45720-MER

Debtors.

Chapter 13

_____

MEMORANDUM DECISION
_____

At Minneapolis, Minnesota, May 19, 2014.

This matter came before the Court on February 6, 2014, on the objection of the standing chapter 13 Trustee ("Trustee") to confirmation of the modified chapter 13 Plan ("Plan") of Daniel C. Hoffman and Beth A. Hoffman ("Debtors") under 11 U.S.C. §§ 1322 and 1325.[1] Karl J. Johnson appeared on behalf of the Trustee; Michael J. Sheridan appeared for the Debtors. The Court requested, and the parties provided, supplemental briefing on the issue presented. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Court makes this memorandum decision based on all the files, records, and proceedings herein, and pursuant to Fed. R. Bankr. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c).

ISSUE

At issue is whether the Debtors' Plan, which proposes a three-year applicable commitment period, may be confirmed. The threshold issue is whether a self-employed chapter 13 debtor may deduct ordinary and necessary business expenses when calculating

---

[1] All statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2012), unless otherwise noted.

current monthly income to determine the applicable commitment period. For the reasons set forth below, this Court holds that such a debtor may not deduct ordinary and necessary business expenses when calculating current monthly income for purposes of determining the applicable commitment period. Accordingly, the Trustee's objection to confirmation is sustained and confirmation of the Debtors' Plan is denied.

FACTUAL AND PROCEDURAL BACKGROUND

The Debtors filed a joint, voluntary petition and supporting schedules and statements under chapter 13 of the Bankruptcy Code ("Code") on November 26, 2013. The schedules indicated that their household size consisted of two individuals; they listed no dependents. Debtor Daniel C. Hoffman ("Daniel") was self-employed, and Joint Debtor Beth A. Hoffman ("Beth") worked as a custodian. The schedules also indicated that the Debtors have a combined, projected average monthly income of $4,422.00 and combined, projected average monthly expenses of $4,247.00, which resulted in a combined, projected monthly net income of $175.00.

On their Official Form 22C–Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"), the Debtors stated the following information as derived from the six calendar months prior to filing: Beth's gross wages, salary, tips, bonuses, overtime, and commissions of $3,458.12 (Line 2); Daniel's business income of $1,201.59 (Line 3), which reflected a $769.24 deduction for ordinary and necessary operating expenses from gross receipts of $1,970.00; the Debtors' total current monthly income of $4,659.71 (Lines 11 and 14) with annualized current monthly income of $55,916.52 (Line 15); and an applicable

2

median family income of $63,654.00[2] in the state of Minnesota for a household of two individuals (Line 16). On Line 17 of Form 22C, the Debtors checked the box for an applicable commitment period of three years, denoting that their calculation for their annualized current monthly income was less than the applicable median family income. *See* § 1325(b)(4)(A) (prescribing an applicable commitment period of three years when current monthly income multiplied by twelve is less than the median family income of the applicable state).

In their Plan, the Debtors proposed to pay $175.00 per month for thirty-six months for a total of $6,300.00 to be paid over the life of the Plan, and to distribute the $6,300.00 Plan funds as follows: $630.00 for the Trustee fee, $2,500.00 for the Debtors' bankruptcy attorney fee, and the remaining balance ($3,170.00)[3] to the holders of non-priority, unsecured claims; these unsecured claims totaled $63,027.98. The Plan did not provide for payment in full of all allowed unsecured claims; the amount to be distributed to the holders of non-priority, unsecured claims was approximately 5%.

The Trustee objected to confirmation of the Plan and argued that the Debtors improperly deducted business expenses on Line 3 of Form 22C when they calculated Daniel's current monthly income because the Code did not provide for the deduction of ordinary and necessary expenses when calculating current monthly income. The Trustee stated that eliminating the deduction for necessary and ordinary expenses causes the

---

[2] The actual state median family income figure was $64,454 for a family size of two in Minnesota for cases filed between November 15, 2013 and March 31, 2014.

[3] There is a discrepancy in the Debtors' figures. In two separate paragraphs of the Plan (¶11 and ¶14), the payment to the unsecured creditors is $1,002.32; however, that number, when added to the other payments under the Plan, totals $4,132.32 [$630.00+$2,500.00+$1,002.32]. Since the amount of disposable income to be paid over the life of the plan is $6,300.00, the correct figure to be paid to the unsecured creditors is $3,170.00.

Debtors' current monthly income to become above-median, thereby triggering a five-year applicable commitment period rather than the three-year period proposed by the Debtors.

In response, the Debtors argued that their applicable commitment period was proper because they calculated it in accordance with Form 22C, which allowed them to deduct ordinary and necessary business expenses in computing their current monthly income.

## ANALYSIS

A. Objection to Confirmation

In this case, the appropriate basis for objecting to confirmation of the plan derives from § 1325(b)(1)(B), as the Debtors' Plan does not provide for a 100% distribution to unsecured claims. § 1325(b)(1)(A)–(B); *see also Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) ("If an unsecured creditor or the bankruptcy trustee objects to confirmation, § 1325(b)(1) requires the debtor either to pay unsecured creditors in full or to pay all 'projected disposable income' to be received by the debtor over the duration of the plan."). Under § 1325(b)(1)(B), when a chapter 13 trustee, or the holder of an allowed unsecured claim objects to confirmation of the plan, the court may not approve the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the *applicable commitment period"* will be applied to make payments to unsecured creditors under the plan. § 1325(b)(1)(B) (emphasis added). Applying § 1325(b)(1)(B) to this case, the Court may not confirm the Debtors' Plan unless their Plan proposes to apply all of their projected disposable income received in the applicable commitment period to unsecured creditors under the Plan. While the Debtors and the

4

Trustee do not dispute the Debtors' calculation of projected disposable income, they disagree as to the Debtors' applicable commitment period.

B.  Applicable Commitment Period

Section 1325(b)(4) provides instruction for determining the applicable commitment period. § 1325(b)(4). Since the Debtors' Plan does not provide for the payment in full of all unsecured claims, then, under § 1325(b)(4)(A), in pertinent part, the "applicable commitment period" shall be—

> (i)  3 years; or
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
> . . . .
> > (II)  in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;

§ 1325(b)(4)(A). In § 1325(b)(4)'s prescription of the applicable commitment period, noticeably absent is any mention of "ordinary and necessary business expenses." § 1325(b)(4).

Pursuant to § 1325(b)(4), when a debtor does not qualify for a less than three-year or five-year plan because the plan does not provide for full payment of all allowed unsecured claims, then the applicable commitment period depends upon whether that debtor has current monthly income that is above-median or below-median. § 1325(b)(4). In the case at bar, because the Debtors do not propose to pay unsecured claims in full, the appropriate starting point for determining the applicable commitment period is to determine the current monthly income.

5

   C. Current Monthly Income

Current monthly income ("CMI") is defined at § 101(10A), which provides:

> The term "current monthly income"—
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
>    (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>    (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

§ 101(10A). In its definition of CMI in § 101(10A), the Code explicitly excludes certain sources of income while including all other sources of income without regard to whether any of those other sources of income is taxable income. § 101(10A). Importantly, there is no mention of an allowance for the deduction or exclusion of ordinary and necessary business expenditures in § 101(10A). § 101(10A).

Form 22C takes a markedly different approach from the Code's definition of CMI in § 101(10A); the form explicitly permits a chapter 13 debtor who receives income from the operation of a business, profession, or farm to subtract ordinary and necessary operating expenses from gross receipts to compute CMI. § 101(10A); Official Form

6

22C–Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Chapter 13) (04/13) Lines 3a.–3c.

While neither § 101(10A) nor § 1325(b)(4) specifically mentions a deduction for ordinary and necessary business expenses when referring to CMI, § 1325(b)(2), however, provides that a debtor engaged in a business may deduct business expenses to calculate *disposable income*. §§ 101(10A), 1325(b)(2), 1325(b)(4). In pertinent part, § 1325(b)(2) provides:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--
> . . .
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

§ 1325(b)(2).

D. Case Law Discussion

There are at least two different methods of determining the applicable commitment period. On one hand, the Code, at § 1325(b)(4), provides that one look at current monthly income with no reference to business expenses to determine the applicable commitment period. § 1325(b)(4). On the other hand, Form 22C provides for the deduction of business expenses when calculating CMI to determine the applicable commitment period. Official Form 22C–Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Chapter 13) (04/13) Lines 3a.–3c.

The Trustee notes that many courts have held that a self-employed debtor may not deduct ordinary and necessary business expenses when calculating CMI to determine the applicable commitment period. The Trustee specifically points to *Drummond v. Wiegand (In re Wiegand)*, 386 B.R. 238, 238 (B.A.P. 9th Cir. 2008), which discussed an issue similar to this case. In *Wiegand*, the trustee objected to confirmation because on Form 22C, the self-employed debtor calculated current monthly income by deducting ordinary and necessary business expenses from gross receipts, thereby reducing the current monthly income to a below-median figure. *Id.* at 239. This qualified the debtor for a three-year applicable commitment period. *Id.* On appeal, the Ninth Circuit Bankruptcy Appellate Panel held:

> [A] chapter 13 debtor engaged in business may not deduct ordinary and necessary business expenses from gross receipts for the purpose of calculating current monthly income as defined under § 101(10A). Rather, such deductions are authorized under § 1325(b)(2)(B) and, therefore, are to be subtracted from current monthly income when calculating disposable income pursuant to § 1325(b)(2). To the extent that Part I of Form 22C requires a business debtor to calculate current monthly income by subtracting ordinary and necessary business expenses from gross receipts, we hold that Part I of Form 22C is inconsistent with § 1325(b)(2).

*Id.*

As additional support, the Trustee cites *In re Arnold*, 376 B.R. 652, 654 (Bankr. M.D. Tenn. 2007), a case involving a trustee's objection to the debtors' proposed three-year plan period. There, the debtors proposed their plan period based on their amended Form 22C, in which they deducted business expenses on Line 3 to calculate current monthly income. *Id.* at 653. The resulting annualized current monthly income figure was less than the applicable median income, which consequently permitted a three-year applicable commitment period instead of a five-year applicable commitment period that

8

would have resulted had the debtors not deducted business expenses when calculating current monthly income. *Id.* The court reasoned that "nothing in 11 U.S.C. § 101(10A) indicates that expenses, whether business or personal, may be deducted in determining current monthly income." *Id.* at 654. The court reasoned that "Official Form 22C, Part I, Line 3, which permits the deduction of business expenses to determine 'current income' is simply wrong," *id.*, and that in a battle between the Bankruptcy Code and the Official Bankruptcy Forms, "the Bankruptcy Code always wins." *Id.* at 653.

To further support his position, the Trustee cites *In re Bembenek*, No. 08-22607-svk, 2008 WL 2704289, at *1 (Bankr. E.D. Wis. July 2, 2008), for the proposition that a self-employed debtor may not deduct business expenses to calculate current monthly income. In that case, the chapter 13 debtor used Form 22C to calculate CMI, and on that form, the debtor deducted ordinary and necessary business expenses on Line 3b from gross receipts on Line 3a to arrive at CMI. *Id.* The resulting CMI was less than the applicable median family income. *Id.* The trustee objected to the debtor's plan and argued that business expenses should not be deducted to determine CMI because Form 22C was inconsistent with the Code. *Id.* The court held that "the unambiguous provisions of the Code must take precedence over the Form." *Id.* at *2. The court reasoned that "Section 101(10A) includes all income within CMI. It does not say 'net income' or 'income after allowable expenses.' When read in tandem with § 1325(b)(2), the meaning [of Section 101(10A)] becomes even clearer, since disposable income is CMI less 'expenditures necessary for the … operation of a business.'" *Id.* at *1. The court then concluded that business expenses should be deducted in the *Other Expenses* category in Part IV of Form 22C. *Id.* at *2.

9

On the other hand, while the Debtors acknowledge *Wiegand*, *Arnold*, and *Bembenek*, they rely on *In re Roman*, No. 11-01415 BKT, 2011 WL 5593143, at *1 (Bankr. D.P.R0Nov. 16, 2011), in support of their position that a debtor may deduct business expenses when calculating CMI for purposes of determining the applicable commitment period. In that case, and as directed by Form 22C, the debtors deducted business expenses from self-employment income, which resulted in a below-median CMI, and thus entitled the debtors to a three-year commitment period. *Id.* at *1. The trustee objected to confirmation of the plan and argued that, despite Form 22C's instructions, the debtors should not be able to deduct ordinary and necessary business expenses when calculating CMI to determine the applicable commitment period. *Id.* The court agreed with the trustee that "the plain meaning of the statute must govern the result," but the court disagreed with the trustee's interpretation of the plain meaning of §§ 101(10A), 1325(b)(2)(B) and Form 22C. *Id.* at *3. The court reasoned that "Bankruptcy Rule 9009 requires the use of Official Forms, which shall be construed to be consistent with the Bankruptcy Rules and Code;" that under Fed. R. Bankr. P. 1007(b)(6), chapter 13 "debtors must complete Form B22C to determine [their] current monthly income and to calculate the disposable income amount;" and that Form 22C provides "that current monthly income should include only net business expense amounts." *Id.* at *3. The court held that "it will apply the mechanical test in determining disposable income in both Sections 1325(b)(1)(B) and 1325(b)(2) by reference to current monthly income determined pursuant to Section 101(10A) and Form B22C." *Id.* at *4. Additionally, the court reasoned that "the use of gross receipts for self-employed debtors would lead to distinctions in the calculation of current monthly income based on the

10

business form under which the debtor has chosen to operate, resulting in prejudicial treatment to business proprietors," and that the "trustee's interpretation of Form B22C would artificially inflate the current monthly income of [the debtor] by including as part of his income the business revenue that would in fact be consumed by business expenses." *Id.*

As further support of their position that a self-employed debtor may deduct business expenses from gross receipts in the calculation of CMI, the Debtors cite to *In re Romero*, No. 12-20793-BKC-AJC, 2013 WL 241742, at *1 (Bankr. S.D. Fla. Jan. 18, 2013). There, a self-employed debtor deducted business expenses from his business income to calculate CMI on Form 22C. *Id.* The resulting CMI was below-median; consequently, the debtor's plan proposed a three-year commitment period. *Id.* In objecting to the debtor's plan, the trustee argued against the deduction of business expenses when calculating current monthly income to determine the applicable commitment period. *Id.* *Romero* found *Roman* persuasive and adopted its reasoning. *Id.* at *2. As in *Roman*, the court in *Romero* reasoned that the use of gross receipts as CMI for self-employed debtors led to distinctions in CMI calculations based on the debtor's chosen business form, which resulted in prejudicial treatment to business owners. *Id.* The court additionally reasoned that since business expenses consumed business revenue, then to include business expenses in CMI would artificially inflate a debtor's income. *Id.* at *3. The court believed that "computing current monthly income in accordance with Section 101(10A) and Form B22C [was] the appropriate method for determining disposable income in both Sections 1325(b)(1)(B) and 1325(b)(2)." *Id.*

11

In addition to the cases cited by the parties above, *In re Harkins*, 491 B.R. 518, 518 (Bankr. S.D. Ohio 2013) discussed whether a debtor may deduct business expenses when calculating CMI to determine the applicable commitment period. *Harkins* involved three separate chapter 13 cases; in each case the debtors used Form 22C to determine their respective applicable commitment periods, and in each case, the debtor deducted business expenses from self-employment income on Line 3(b) of Form 22C. *Id. at* 523. Deducting business expenses reduced the debtors' CMI from above-median to below-median, which, in turn, caused each of them to have an applicable commitment period of three years. *Id.* In each case, the chapter 13 trustee objected to confirmation, arguing that the debtors could not subtract business expenses from gross receipts to calculate CMI, and that if the debtors calculated their CMI without subtracting business expenses, the debtors' income would be above-median, which would then require a five-year applicable commitment period. *Id.* In a comprehensive and well-reasoned opinion, the court sustained the trustee's objection and ruled that, despite the directives on Form 22C, the Code required the debtors to use gross receipts to calculate CMI. *Id.* at 543. *Harkins* employed a plain language approach of statutory construction to determine whether § 1325(b)(2)(B) allowed a business debtor to deduct business expenses to arrive at current monthly income. *Id.* at 536. The court reasoned that § 1325(b)(2)(B) plainly provides that business expenses may not be deducted when calculating monthly income because under § 1325(b)(2)(B), "current monthly income is the starting point for calculating a debtor's disposable income. It is from this starting point that one then subtracts certain amounts, including, if the debtor is engaged in business, 'amounts

reasonably necessary to be expended . . . for the payment of expenditures necessary for the continuation, preservation, and operation of such business.'" *Id.* at 535 (quoting § 1325(b)(2)); *accord In re Sharp*, 394 B.R. 207, 216 (Bankr. C.D. Ill. 2008) (following "*Wiegand*, *Arnold*, and *Bembenek* and find[ing] that, in calculating current monthly income, a self-employed debtor must use gross business income and may not deduct business expenses in the calculation" despite Form 22C directives). In addition, the court reasoned that "[i]n sum, an official form and the Bankruptcy Code are in conflict. When that is the case, the Bankruptcy Code controls the outcome." *Harkins*, 491 B.R. 518 at 543 (citing *Harman v. Fink* (*In re Harman*), 435 B.R. 596, 599 (B.A.P. 8th Cir. 2010) ("The applicable form in this case is the B22C form. However, it is ultimately the statute, not the form, which determines the applicable commitment period. The official forms 'shall be construed to be consistent with [the Federal Rules of Bankruptcy Procedure] and the Code.' Fed. R. Bankr. P. 9009.")).

Along the same line of reasoning, *In re Compann*, 459 B.R. 478, 483 (Bankr. N.D. Ga. 2010), too, resolved the issue of whether a debtor may deduct business expenses from CMI before annualizing it to determine the applicable commitment period. Acknowledging that the Code prevails over the Official Bankruptcy Forms, *id.* at 482, the court determined that the debtor "improperly deducted business expenses in Part I of Form 22C" because Form 22C's computation does not comply with the Code. *Id.* That court reasoned that § 101(10A)(B) did not exclude business expenses from income, *id.* at 481, and to the extent that Form 22C uses net income instead of gross income to calculate CMI, then Form 22C is inconsistent with § 101(10A). *Id.* at 482.

13

To determine the applicable commitment period, Form 22C directs one to deduct business expenses to calculate current monthly income. Official Form 22C–Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Chapter 13) (04/13) Lines 3a.–3c. On the other hand, to determine the applicable commitment period, § 1325(b)(4) directs one to look at current monthly income and is silent with regard to business expenses. § 1325(b)(4). Neither § 1325(b)(4) nor § 101(10A) directs a chapter 13 business debtor to deduct ordinary and necessary business expenses in calculating current monthly income. §§ 101(10A), 1325(b)(4). Rather, the Code, at § 1325(b)(2)(B), directs a chapter 13 business debtor to deduct business expenses to calculate *disposable income*. § 1325(b)(2)(B). Upon a plain meaning interpretation of §§ 101(10A) and 1325(b)(2)(B), this Court concludes that there is a conflict between the provisions of the Code and the instructions found in Form 22C as to the determination of the applicable commitment period. When the Code and the Official Bankruptcy Forms conflict, the Code controls. *In re Harman*, 435 B.R. 596, 599 (B.A.P. 8th Cir. 2010) ("[I]t is ultimately the statute, not the form, which determines the applicable commitment period."). In addition, "when 'the statute's language is plain, the sole function of the courts'—at least where the disposition required by the text is not absurd—'is to enforce it according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1 (2000) (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989)). Under the Code, a debtor engaged in a business must first look at current monthly income and then deduct from current monthly income reasonably necessary business expenses to deduce *disposable income*. § 1325(b)(2)(B). Succinctly, if the chapter 13 debtor is engaged in a business, the debtor's CMI is income without

regard to business expenses, while disposable income is income with regard to business expenses.  §§ 101(10A), 1325(b)(2)(B), 1325(b)(4).  To that end, the Court respectfully disagrees with the Debtors and their reliance on *Roman* and *Romero*.  Instead, the Court agrees with the rationales employed in *Harkins, Wiegand*, *Arnold*, *Compann, Sharp,* and *Bembenek*—a self-employed chapter 13 debtor may not deduct ordinary and necessary business expenses when calculating current monthly income for purposes of determining the applicable commitment period.

Accordingly, for the reasons articulated in this memorandum decision,

    **IT IS HEREBY ORDERED THAT** the objection of the chapter 13 trustee is SUSTAINED and the Debtors' confirmation of plan is DENIED.

*/e/ Michael E. Ridgway*
_____
Michael E. Ridgway
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/19/2014*
Lori Vosejpka, Clerk, by SS

15